## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LAKEISHA STONE, | : | MOTION TO VACATE |
| Fed. Reg. No. 71240-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:17-CR-417-MHC-JSA-1 |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:19-CV-3784-MHC-JSA |

## MAGISTRATE JUDGE'S FINAL ORDER AND REPORT AND RECOMMENDATION

Movant Lakeisha Stone has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255, in which she seeks to challenge the constitutionality of her convictions and sentences following her guilty plea in the Northern District of Georgia. (Doc. 64). The Government's motions for an extension of time to file a response [Docs. 69, 73] are **GRANTED** *nunc pro tunc*. The pleadings filed on November 21, 2019 [Doc. 73] are accepted as filed.

I.   Procedural History

On November 28, 2017, a grand jury in the Northern District of Georgia returned an indictment against Movant and charged her with conspiracy to commit wire fraud in violation of 18 U.S.C. §1349 (Count One), ten counts of wire fraud in violation of 18 U.S.C. §§1343 and 2 (Counts Two through Eleven), ten counts of aggravated identity theft in violation of 18 U.S.C. §§1028A and 2 (Counts Twelve

through Twenty-One), and two counts of theft of Government money in violation of 18 U.S.C. §§641 and 2 (Counts Twenty-Two and Twenty-Three), all in connection with a scheme of filing false tax returns.  (Doc. 1).  On September 20, 2018, Movant entered a guilty plea, pursuant to a negotiated plea agreement, to Counts One (conspiracy to commit wire fraud) and Twelve (aggravated identity theft).  (Doc. 41-1).  The negotiated plea agreement contains a waiver of Movant's appellate and collateral rights (hereinafter "appellate waiver" or "appeal waiver").  (Doc. 41-1 at 15-16, ¶30).  On December 10, 2018, U.S. District Court Judge Mark H. Cohen sentenced Movant to a total of fifty (50) months of imprisonment.[1]  (Doc. 48).  Movant did not file a direct appeal.

On May 31, 2019, Movant filed a motion to modify her sentence under the First Step Act of 2018, which the Clerk docketed as a §2255 motion to vacate her sentence.[2]  (Doc. 56).  On June 24, 2019, Judge Cohen entered an Order and noted that although the Clerk docketed the motion as a motion to vacate under §2255, he would construe the motion as one requesting a reduced sentence under Section 404 of the First Step Act.  (Doc. 57).  Judge Cohen then found that Movant had not been

---

[1]     Specifically, Movant was sentenced to twenty-six (26) months of imprisonment for the conspiracy charge, and a mandatory consecutive twenty-four (24) months of imprisonment for the aggravated identity theft charge.  (Doc. 48).

[2]     The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows, *inter alia*, district courts to retroactively reduce sentences for crack cocaine offenses.

convicted of a "covered offense" which would qualify for a reduction of sentence under the First Step Act; *i.e.,* trafficking of crack cocaine, and denied the motion. (*Id.*). The Eleventh Circuit Court of Appeals dismissed Movant's appeal thereof for want of prosecution on September 16, 2019. (Doc. 65).

In the interim, on August 19, 2019, Movant filed the instant §2255 motion to vacate her sentences. (Doc. 64). Therein, Movant asserted challenges to Judge Cohen's prior Order denying her motion under the First Step Act, arguing that: (1) the Court deprived Movant of her due process rights by construing the motion as a §2255 motion, "attempting to deprive movant of her right to file a 2255 motion once she discovered that she had been sentenced and being held in violation of the Constitution" and (2) in construing her motion under the First Step Act as a §2255 motion, the Court violated her Sixth Amendment right to an impartial factfinder "in an effort to '**FORCE**' movant to have to receive permission from the Court to file a 2255 motion, in which the Court would be sure not to grant." (*Id.* at 5-6). Movant, also complains that: (1) this Court committed plain error by adopting the pre-sentence investigation report's ("PSR") recommended increase in the base level for her leadership role in the offense pursuant to U.S.S.G. §3B1.1(c); and (2) her counsel was ineffective by allowing the Government to use information from her proffer against her and by failing to delay her sentencing until after the passage of the First

Step Act.  (*Id.* at 8-9).  On September 25, 2019, Judge Cohen referred this case to the undersigned for a report and recommendation.  (Doc. 66 at 3).

The Government argues that the Court should deny the §2255 motion because: (1) Movant's claims challenging the Court's denial of her First Step Act motion are without merit; (2) the appellate waiver bars Movant's sentencing claim; and (3) she has not demonstrated that counsel was ineffective.  (Doc. 73).  Movant has not filed a reply.

For the following reasons, the undersigned **RECOMMENDS** that the instant § 2255 motion be **DENIED**.

II.    Relevant Law

A.    Standard Of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum

4

authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding her claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below and contrary to Movant's argument, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with her claims. Thus, no evidentiary hearing is required.

B.     The Rules Regarding Procedural Default

"A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so." *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014). *See also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge"). The movant can "avoid the procedural bar by establishing that either of the following exceptions applies: (1)

cause and prejudice, or (2) a miscarriage of justice based on actual innocence." *Hill*, 569 F. App'x at 648. "[T]o show cause for procedural default, [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or [her] counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). "Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]" *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010). To demonstrate a miscarriage of justice based on actual innocence, the movant must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234-35 (internal quotation marks and citations omitted). A movant claiming that she is actually innocent must show factual innocence rather than legal innocence. *Rozelle v. Secretary, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012).

III.   Analysis

    A.   Movant's Challenges To The Court's Denial Of Movant's First Step Act Motion Are Without Merit.

In her first two claims for relief, Movant argues that the Court deprived her of her due process rights when it construed her First Step Act motion as a §2255 motion, thus impeding her rights to file another §2255 motion. She also claims that by construing her motion as a §2255 motion the Court deprived her of her Sixth

Amendment right to an impartial tribunal.  The factual basis of Movant's arguments, however, is simply wrong.

Indeed, Judge Cohen specifically indicated that "[t]he Court will consider this as Defendant's Motion for a Reduced Sentence pursuant to Section 404 of the First Step Act," analyzed it as such, and denied the motion.[3]  (Doc. 57).  Other than providing a footnote that the Clerk had docketed the motion as one under §2255, nowhere else in the Order did Judge Cohen even mention §2255.  And importantly, at this juncture the Government has not argued, and the undersigned has not recommended, that Movant be barred from filing the instant motion as a second or successive §2255 motion.

Moreover, by virtue of its title, a §2255 motion can only be utilized to challenge the movant's sentence; *i.e.,* "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. §2255(a).  Thus, Movant may not utilize this §2255 motion to challenge the denial of other collateral relief.  *See id.*; *Cf. Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (concluding that petitioner could not challenge the state court's

---

[3]     Importantly, when Judge Cohen indicated that he would construe the motion as one for a reduction of sentence under the First Step Act, he noted that the Clerk had docketed it as a §2255 motion. (*See* Docket at Doc. 56, Doc. 64 at 1 & n.1).

failure to hold a hearing on another collateral motion nor its failure to attach the relevant portions of the record because those issues do not undermine the validity of the petitioner's conviction and thus did not state a §2254 claim for habeas relief); *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979) (affirming denial of §2255 motion and stating that "the sole function of habeas corpus is to provide relief from [u]nlawful imprisonment or custody, and it cannot be used for any other purpose").

Finally, the Eleventh Circuit dismissed Movant's appeal of the denial of her First Step Act motion for want of prosecution since she failed to either pay the filing fees or file a motion to proceed *in forma pauperis* within the required time period. (Doc. 65). Thus, Movant's claim challenging the Court's ruling is procedurally barred. *See, e.g., United States v. Casby*, No. 11-0130, 2018 WL 6602088, at *4 (E.D. La. Dec. 17, 2018) (finding claim procedurally defaulted where appeal was dismissed for want of prosecution); *Reed v. United States*, No. 1:07-CR-19-1 (WLS), 2009 WL 3617758, at *1 (M.D. Ga. Oct. 28, 2009) (adopting magistrate judge's report and recommendation that the petitioner procedurally defaulted his claims because although he filed a notice of appeal, it was dismissed for want of prosecution). Movant has not attempted to demonstrate cause or actual prejudice for the procedural default; nor has she indicated that she is actually innocent.[4] Movant,

---

[4]     Although Movant raises an ineffective assistance of counsel claim, she does not claim that counsel was ineffective for failing to file an appeal of this issue or generally for failing to file an appeal, and the ineffective assistance claim that she

therefore, cannot overcome the procedural default of her challenges to the Court's Order denying her motion for a reduced sentence under the First Step Act.

> B.    <u>Movant's Sentencing Claim Is Not Cognizable In This Action, It Is Barred By The Appeal Waiver, And It Is Procedurally Defaulted.</u>

> 1.    *Sentencing Issues Are Not Cognizable Under §2255.*

Movant next contends that it was "plain error" when the Court adopted the pre-sentence report" that attributed a leadership role enhancement and a $1,058,604 loss amount to Movant. (Doc. 64). The Court first notes that Movant and the Government agreed to a loss amount of more than $550,000 but less than $1,500,000 resulting in a 14-level enhancement under the United States Sentencing Guidelines [Doc. 41-1 at 6 ¶13.c.] ("U.S.S.G."), and $1,058,604 is within that range. (Sent. Tr. at 4-5). Additionally, the PSR detailed the facts indicating that Movant organized, managed, and supervised the offenses. (PSR at 19-20 ¶56). And while Movant originally objected to the enhancement, she specifically withdrew that objection during sentencing. (Sent. Tr. at 3). Finally, Movant does not, and cannot, demonstrate that this issue raises a constitutional violation; therefore, this claim is not cognizable under §2255. *See Reed v. Farley*, 512 U.S. 339, 348 (1994)

---

does raise is without merit as discussed more thoroughly herein. Regardless, even if this Court could construe Movant's allegations as alleging that counsel's failure to appeal the First Step Act denial, the loss attributable to her, and/or the leadership sentencing enhancement, she has not demonstrated that any of these claims would have merit. As a result, she has not demonstrated that she was prejudiced by any such failure.

(interpreting §2255(a) to mean that a defendant may raise a non-constitutional claim on collateral review only if the alleged error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.") (internal quotation marks and citations omitted); *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) ("[A] claim that the sentence imposed is contrary to a subsequently enancted clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice[.]"); *see also Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) ("[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, . . . are not cognizable on collateral review."); *Colston v. United States*, Nos. 03-cr-208-T-17TGW, 8:09-cv-2614-T-17TGW, 2011 WL 13186524, at *7 (M.D. Fla. Mar. 23, 2011) ("[T]he Eleventh Circuit and other courts have held that a defendant cannot obtain relief pursuant to §2255 based on a claim of nonconstitutional error in the application of the sentencing guidelines unless he demonstrates that the error results in a complete miscarriage of justice.").  The Court cannot say that the "error" about which Movant complains resulted in a complete miscarriage of justice.   Thus, Movant's nonconstitutional challenges to the Court's application of the leadership role enhancement and amount of loss are not cognizable in this §2255 motion.

10

2.    *The Appellate Waiver Bars Movant's Sentencing Claim.*

Movant does not appear to dispute that she entered into her plea knowingly and voluntarily. Regardless, Movant's sworn testimony during the plea colloquy – which carries a strong presumption of truth (*see Blackridge v. Allison*, 431 U.S. 63, 74 (1977)) – indicates that she did, in fact, enter into her plea knowingly and voluntarily.

Indeed, during the plea hearing, Movant swore that: she understood the plea agreement, no one had threatened or forced her to enter a guilty plea, no one had threatened to bring additional charges or any other adverse action if she did not enter a guilty plea, and no one had made any promises that influenced her decision to enter the guilty plea other than the promises contained in the plea agreement. (Plea Transcript [Doc. 71] ("Plea Tr.") at 14-16). Movant has not argued or brought forth any evidence whatsoever to rebut the strong presumption of the veracity of her statements during the plea hearing, and she therefore has failed to demonstrate that her plea was anything other than knowing and voluntary. *Cf. Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (finding the movant's allegations that his plea was not voluntary were in direct conflict with his statements during the plea colloquy, he produced no evidence to challenge the veracity of his sworn testimony, and his last minute self-serving statements were therefore insufficient to demonstrate that his plea was not entered into voluntarily).

11

Because Movant knowingly and voluntarily entered into the plea agreement containing the appellate waiver, that appellate waiver is valid and enforceable.  *See United States v. Arce*, 718 F. App'x 931, 933-34 (11th Cir. 2018); *United States v. Santiesteban*, 587 F. App'x 548, 551 (11th Cir. 2014); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011); *United States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).  "[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted).  In order to prevail on an argument to enforce a waiver, the Government must show that either "(1) 'the district court questioned the [movant]' about the waiver; or (2) the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  In this case, the Government has demonstrated both.

The appellate waiver in the plea agreement provides as follows:

### Limited Waiver of Appeal

30.    LIMITED WAIVER OF APPEAL:  To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal her conviction and sentence and the right to collaterally attack her conviction and sentence in any post-conviction

proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. §2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range calculated by the district court. Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 41-1 at 15-16, ¶30). During the plea hearing, the Court asked the Government to summarize the plea agreement, (Plea Tr. at 9-13), during which, *inter alia*, the Government read the entire appellate waiver provision verbatim. (Plea Tr. at 12-13). Thereafter, Movant stated that she agreed with the terms the Government read aloud. (*Id.* at 13).

The Court also specifically questioned Movant about the appellate waiver, asking her if she understood that she was giving up her right to appeal:

COURT:     Do you also understand that as part of your plea agreement, with three narrow exceptions, you're giving up the right you would have to appeal the sentence that will be imposed in this case?

MOVANT:  Yes, your Honor.

COURT:     Specifically, unless there has been what's called an upward departure or variance from the guidelines, in other words, if I would sentence you to a term of imprisonment that is greater than that called for by the guidelines, or if there is an appeal taken by the government, or if there is a claim that your lawyer rendered constitutionally ineffective assistance, unless it's one of those three narrow exceptions, you're giving up your right to appeal, which

13

means you will be bound by the Court's decision as to your sentence. Do you understand this?

MOVANT:    I do, your Honor.

COURT:    Do you also understand you're giving up what's called the right to collaterally attack your conviction and sentence in a postconviction proceeding? What that means is that after you're convicted, you can never file a complaint that says there was some defect in the prosecution of your case that justifies your release from incarceration. Do you understand that?

MOVANT:    I do, your Honor.

(Plea Tr. at 23-24).

It is therefore clear from the record that Movant understood the plain language of the appellate waiver, and Movant does not challenge that understanding. Consequently, Movant's appellate waiver is valid and enforceable. *See Demello v. United States*, 623 F. App'x 969, 973-74 (11th Cir. 2015) (holding collateral attack waiver valid and enforceable where the court specifically questioned the movant about the waiver and told him he was waiving his right both to an appeal and post-conviction proceeding, the movant affirmed that he understood the terms of the waiver and had agreed to those terms, when asked whether he had any questions he responded that he had none, and the terms of the plea agreement and representations movant made therein further showed that he understood the significance of the waiver); *United States v. Steele*, 168 Fed. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the

14

waiver provision); *United States v. Montes*, 151 Fed. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and voluntarily waiving his right to appeal his sentence), *See also Bushert*, 997 F.2d at 1350-51.

Movant's claim that the Court erred when it increased her base offense level based on her leadership role is not encompassed within any of the exceptions contained in the appellate waiver.  Movant is therefore precluded from raising it. *See, e.g., United States v. McLaughlin*, 813 F.3d 202, 204-05 (4th Cir. 2016) (dismissing movant's appeal of a leadership role enhancement because it was barred by the appellate waiver); *United States v. Reyna*, 360 F. App'x 992, 997-98 (10th Cir. 2010) (dismissing movant's appeal of, *inter alia*, his sentence enhancement for a leadership role, because the claim was barred by the appellate waiver); *United States v. Ahmad*, 325 F. App'x 149, 153 (3d Cir. 2009) (finding appellate waiver barred the defendant from appealing the leadership role enhancement); *Carter v. United States*, No. CR214-14, 2016 WL 3996716, at *4 (S.D. Ga. July 22, 2016) (finding appellate waiver precluded movant's claim that he should not have received a sentence enhancement based on his leadership role).  *Compare United States v. Payan*, 760 F. App'x 889, 892 (11th Cir. 2019) (dismissing appeal challenging the district court's rejection of the movant's request for a minor role reduction because the knowing and voluntary appellate waiver barred the movant from raising it).

3.   *Movant's Sentencing Claim Is Procedurally Barred*.

Finally, Movant did not file an appeal of her sentence; thus, her challenge to the leadership role enhancement and/or the loss amount attributable to her is procedurally defaulted. Nor has she even attempted to demonstrated cause, prejudice, or that she is actually innocent.[5] Moreover, because this nonconstitutional claim is raised for the first time on collateral review, Movant has not shown that the alleged error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice," which she is required to do. *See Reed*, 512 U.S. at 348.

Even if Movant had overcome the procedural default, she could not succeed on this claim. Indeed, Movant bears the burden of showing by a preponderance of the evidence that the leadership role should not apply. *See United States v. Everett*, 129 F.3d 1222, 1224 (11th Cir. 1997). In response to Movant's objection to the

---

[5]   To the extent the Court could construe Movant's claim as one that she is actually innocent of the sentencing enhancement, any such argument fails because the crime for which she was convicted, not the sentencing enhancements, are the focus of the actual innocence inquiry. *See Gilbert v. United States*, 640 F.3d 1293, 1320 (11th Cir. 2013) ("A defendant who is convicted and then has the . . . career offender enhancement, or any other guidelines enhancement, applied in the calculation of his sentence has not been convicted of being guilty of the enhancement."), *abrogated on other grounds by McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017).

leadership role adjustment under U.S.S.G. §3B1.1(c),[6] the PSR set forth the

following as further support therefor:

> The probation officer's position is maintained.  While investigating the
> offense, the Government proved that an aggravating role was
> warranted.   Application Note 4 of U.S.S.G. §3B1.1 differentiates
> whether defendants who should receive a two, three, or four level
> increase.  But for the fact that the offense did not involve more than 5
> participants, the defendant's actions justify a four-level increase.  In the
> instant offense, the defendant organized, led, managed, and supervised
> the criminal offense.  The building owners where the various fraudulent
> business were housed identified the defendant as the owner and the
> individual who paid the rent.   The defendant recruited Knox and
> Roberson and directed them to obtain PTINs, EFINs, and business bank
> accounts because she was unable to obtain them due to her criminal
> background.  The defendant set the fees charged by the check cashing
> business and directed Knox regarding the depositing of funds.
> Roberson prepared fraudulent tax returns and withdrew the resulting
> fraudulent refund at the direction of the defendant.  For all of the above
> stated reasons, the probation officer maintains that the Government
> proved the defendant was the leader of the instant offense and an
> aggravating role is appropriately applied.

(PSR at 19-20, ¶56).  Here, Movant simply has provided a conclusory statement that

she should not have received a 2-level adjustment; she has not pointed to, nor

provided, any facts whatsoever to show how the PSR was inaccurate or unreliable

to support her argument that she should not have received a 2-level leadership role

---

[6]        U.S.S.G. §3B1.1 provides that the offense level should be increased by 4
levels if the movant was (a) "an organizer or leader of a criminal activity involving
five or more participants or was otherwise extensive," by 3 levels if the movant was
(b) "a manager or supervisor (but not an organizer or leader) and the criminal activity
involved five or more participants," or (c) by 2 levels if the movant was "an
organizer, leader, manager, or supervisor in any criminal activity other than
described in (a) or (b)."

increase.  Movant, therefore, has not met her burden.  *See, e.g., United States v. Varma*, 295 F. App'x 686, 689 (5th Cir. 2008) ("It was Varma's burden to rebut this evidence [of the movant's leadership role] as 'materially untrue, inaccurate, or unreliable,' . . . but he has failed to meet that burden.  Varma introduced no evidence to refute the facts in the PSR; rather, he argued that those facts were unsupported by sufficient evidence. . . Absent competent rebuttal evidence from Varma, the facts from the PSR as adopted by the district court are not clearly erroneous and support the conclusion that Varma had an organizational or leadership role in the smuggling enterprise at issue."); *United States v. Jean*, 234 F. App'x 66, 68-9 (4th Cir. 2007) ("With regard to Jean's challenge to the three-level enhancement recommended by the PSR and adopted by the district court for a leadership role in a conspiracy pursuant to USSG §3B1.1(b), Jean has not offered any evidence to the contrary or specifically explained why the PSR was inaccurate or unreliable.  His mere challenge, particularly on appeal for the first time, is, without more, insufficient to put the PSR's findings into dispute. . . . Because Jean failed to make the required affirmative showing that the PSR was inaccurate or unreliable, the district court was 'free to adopt the findings of the [PSR] without more specific inquiry or explanation.'") (citations omitted).  Movant's claim, therefore, is without merit.

B.    Movant Has Not Demonstrated That Counsel Was Ineffective.

1.    The Standard For Evaluating Ineffective Assistance Of Counsel Claims

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v.*

19

*Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992). *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

20

2.   <u>Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.</u>

Movant argues that counsel was ineffective by allowing the Government to use information "against her" in violation of her proffer agreement, and for failing to request a continuance so that her sentencing could take place after the First Step Act became law.  (Doc. 64).   The Government argues that counsel wisely chose not to accuse the Government of violating the proffer agreement or to request a continuance of sentencing, and that, in any event, Movant has not demonstrated prejudice.  The undersigned agrees.

First, the Government did not "use information against her in violation of the proffer agreement."    To the contrary, the Government praised Movant's forthrightness and acceptance of responsibility during that proffer and asked the Court to take that fact into consideration when determining Movant's sentence:

> Judge, I have another matter.  We met in chambers – there are some matters I think the Court's aware of.  The defendant, post indictment, to her credit, has been – I think has owned up to what she did, which certainly goes in her favor.
>
> And I told the Court before, and I'll put it on the record, I've been doing this job for several years.  When I sat down with Ms. Stone, I was blown away by how willing she was to own up to what she did.  There was no equivocation.  There was no hesitation.
>
> I think the PSR accurately describes how forthcoming she was when she proffered.  And I think that's something the Court should take into account when crafting an appropriate sentence on her 3553(a).

21

(Sentencing Transcript [Doc. 72] ("Sent. Tr.") at 11-12).   Indeed, the Government clearly wanted the Court to construe Movant's willingness to be accountable and forthright in Movant's favor when determining her sentence, which is quite the opposite of using that information against her.  After that, it would have been objectively unreasonable for counsel to do what Movant claims she should have done – *i.e.,* to raise a patently frivolous claim and accuse the Government of violating the proffer agreement.

Likewise, as discussed previously herein in Section I and footnote 2, the First Step Act does not apply to Movant; therefore, it was not unreasonable for counsel not to ask for a continuance of Movant's sentencing until after the First Step Act was enacted into law.  As neither of these issues had merit, counsel was not ineffective for failing to raise them. *See Lockhart v. Fretwell*, 506 U.S. 364, 382 (1993) ("[I]neffective-assistance claims predicated on failure to make wholly frivolous or unethical arguments will generally be dispensed with under *Strickland*'s first prong[.]"); *Howard v. Warden*, No. 18-14571-B, 2019 WL 1931866, at *1 (11th Cir. Mar. 29, 2019) ("Howard's post-plea counsel was not ineffective for failing to raise meritless claims."); *Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of Harrison's appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective assistance."); *Ladd v. Jones*, 864

F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  For the same reasons, Movant has failed to demonstrate how the outcome would have been different had counsel objected to the Government's use of Movant's proffer "against her" and/or asked for a continuance of sentencing until after the First Step Act went into law.

Nor has Movant alleged or shown that a decision to reject the plea would have been rational.  First, the evidence against Movant was overwhelming, and Movant does not indicate what defense, if any, she would have raised at trial.  (*See* Plea Tr. at 18-20).  Additionally, as part of the negotiated plea, the Government dismissed twenty-one counts against Movant, all of which, had she gone to trial and been convicted, would have significantly increased her sentence exposure.  The remaining nine aggravated identity theft charges alone would have exposed her to an additional eighteen years of imprisonment.[7]

Nor would Movant have received the maximum reduction for acceptance of responsibility, and the Government would not have advocated for leniency from the Court resulting in a below-guideline range sentence.

---

[7]     Indeed, the mandatory minimum for each aggravated identity theft charge is two years to be served consecutively to any other term of imprisonment.  *See* 18 U.S.C. §1028A.  (*See also* PSR [Doc. 62] at 2).

23

Based on just Counts One and Twelve, Movant's guideline range was seventy (70) to eighty-one (81) months.  (PSR at 29).  Had Movant gone to trial and been convicted on all counts, that guideline range would have increased substantially, especially since any sentence she would have received for thirteen of the charges would have required an additional twenty consecutive years for all ten aggravated identity theft counts.[8]   Thus, a rational person in Movant's situation would not have rejected the plea, and Movant has therefore failed to demonstrate prejudice.  *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where he received the "exceptional benefit" of lowering his sentence of imprisonment by eight years); *United States v. Mooneyham*, 580 F. App'x 657, 659-60 (10th Cir. 2014) ("Because Mr. Mooneyham has not identified facts indicating that a rational defendant might have preferred trial over the

---

[8]    For example, without a plea and the resulting three-level reduction for acceptance of responsibility, Movant's adjusted offense level would have been 25, with a criminal history of II, making her guideline range 63-78 months.  *See* U.S.S.G. Ch. 5 Part A. (Sent. Table).  But then the Court would have had to add 240 months consecutive to that guideline range for the ten aggravated identity theft charges, changing the guideline range to 303-318 months.  *See id.*; (PSR at 20, 29).  It goes without saying that this guideline range is significantly higher than the fifty (50)-month sentence Movant received with her negotiated plea.

plea offer, he cannot show prejudice; thus, we reject the claim of ineffective assistance of counsel.").

IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Lakeisha Stone's motion to vacate her sentence [Doc. 64] be **DENIED WITH PREJUDICE**.

V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional

claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).   In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant is precluded by the appellate waiver from bringing her sentencing claim, and that she has not demonstrated that she received ineffective assistance of counsel. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.


**IT IS SO RECOMMENDED AND ORDERED** this 13th day of December, 2019.


JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE